UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZENA M. ANDERSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　　Defendant. | No. 2:18-cv-02809 AC<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1]  For the reasons that follow, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand this case for further proceedings.

////

////

---

[1] SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); <u>Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler</u>, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1

I. PROCEDURAL BACKGROUND

Plaintiff applied for supplemental security income on March 15, 2012. Administrative Record ("AR") 4, 97-101, 109-13, 178, 207.[2] Plaintiff alleged the disability onset date was January 1, 1989. Id. The applications were disapproved initially and on reconsideration. 97-101, 109-13. On November 4, 2013 ALJ Trevor Skarda presided over hearings on plaintiff's challenge to the disapprovals. AR 53-72 (transcript). Plaintiff was present and was represented by Mark Girdner at the hearing. Id. Steven Schmidt, a vocational expert, also testified at the hearing. Id.

On January 9, 2014, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 34-41 (decision), 42-46 (exhibits). On April 29, 2015, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-7. Plaintiff brought a case in U.S. District Court challenging the denial of benefits, and the matter was remanded to the ALJ for further consideration of the record. AR 534-546. Anderson v. Berryhill, No. 1:15-CV-00906-BAM, 2017 WL 460950, at *8 (E.D. Cal. Feb. 2, 2017). In the 2017 case, the presiding Magistrate Judge found that the ALJ properly assessed plaintiff's testimony and assessed the RFC, but that additional proceedings were required regarding the ALJ's step five determination. Id. The ALJ held a new hearing on December 21, 2017, with plaintiff present represented by attorney John V. Johnson. AR 468-90. Vocational Expert Jeff Komar was also present. On September 19, 2018, an ALJ issued a new decision, again denying plaintiff's application. AR 447-59.

Plaintiff filed this action on October 19, 2018. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 6, 9. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 17 (plaintiff's summary judgment motion), 26 (Commissioner's summary judgment motion), 27 (plaintiff's response).

////

---

[2] The AR is electronically filed at ECF Nos. 12-3 to 12-23 (AR 1 to AR 1357).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1962, and accordingly was 49 years old when she filed her application. AR 457. The claimant subsequently changed age category to closely approaching advanced age. Id. Plaintiff has at least a high school education and is able to communicate in English. Id.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue , 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart,

278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Supplemental Security Income is available for every eligible individual who is "disabled." 42 U.S.C. § 1381a. Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., § 416.920(a)(4)(iii), (d).

4

Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., § 416.920(a)(4)(iv), (e), (f).

Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since March 15, 2012, the application date (20 CFR 416.971 *et seq.*).
>
> 2. [Step 2] The claimant has the following severe impairment: degenerative disc disease of the cervical spine (20 CFR 416.920(c)).
>
> 3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of light work. The claimant can lift and/or carry and push and/or pull up to 10 pounds frequently and 20 pounds occasionally. Further, she can sit for up to six hours in an eight-hour workday and stand and/or walk for up to six hours in an eight-hour workday. However, the claimant is limited to frequent climbing, balancing, stooping, kneeling, crouching, and crawling. In addition, she can perform only occasional bilateral overhead reaching. Finally, the claimant is limited to at most occasional bilateral handling and fingering.
>
> 5. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 416.965).

5

> 6. [Step 5] The claimant was born [in 1962] and was 49 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).
>
> 7. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR part 404, Subpart P, Appendix 2).
>
> 9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CF'R 416.969 and 416.969a).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since March 15, 2012, the date the application was filed (20 CFR 416.920(g)).

AR 450-58.

As noted, the ALJ concluded that plaintiff was "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 458.

## VI. ANALYSIS

Plaintiff alleges the ALJ erred by (1) failing to properly weigh and resolve conflicts in medical opinion testimony, (2) improperly discounting plaintiff's subjective testimony, (3) improperly assessing plaintiff's RFC, and (4) improperly using the vocational expert testimony. ECF No. 17-1 at 2-3.

### A. The ALJ Erred by Failing to Evaluate All Medical Opinion Testimony

#### 1. The Medical Opinion Evidence

The record before the ALJ included the medical opinions of orthopedic consultative examiner Dr. Dale Van Kirk, treating physician Dr. Mitchell Cohen, State agency medical consultants Dr. Lydia Kiger and Dr. I.J. Newton, treating physician Dr. F. Karl Gregorius, treating physician Dr. Moris Senegor, treating physician Dr. Lorenzo O. Aguilar, and treating physician Dr. Jared Reeves.

////

On July 26, 2012, Dr. Van Kirk conducted a consultative orthopedic examination. AR 245-47. Dr. Van Kirk reviewed a February 2012 MRI that showed mild degenerative spondylosis with moderate discogenic changes in the C6-C7 area and severe right foraminal stenosis and moderate severe right foraminal stenosis at C5-C6 level. AR 245. Dr. Van Kirk reviewed plaintiff's activities of daily living, and reported that she cooked, did household chores such as mopping, vacuuming and dusting, was able to independently maintain her personal care, drove a car, and walked around the house. AR 245. Upon examination, Dr. Van Kirk noted that plaintiff sat and got up from the examination chair and table without difficulty, could get up on her heels and toes bilaterally and squat and, step without difficulty, and displayed satisfactory tandem walking. Id. She had reduced range of motion and pain in her cervical spine and pain in her shoulder, but had full range of motion of her right shoulder. Id. She had full strength in upper and lower extremities bilaterally and intact sensation throughout. AR 246.

Dr. Van Kirk diagnosed plaintiff with chronic cervical musculoligamentous strain/sprain associated with degenerative spondylosis with moderate discogenic changes in the C6-C7 and C5-6 area and right foraminal stenosis in these two locations. AR 246. Dr. Van Kirk limited plaintiff as follows: stand and/or walk cumulatively for six hours out of an eight-hour workday; sit cumulatively for six hours out of an eight-hour workday; an assistive device was not medically necessary; she could lift and carry frequently 10 pounds and occasionally 20 pounds (limited by chronic neck pain with radiation down the right arm); frequent postural activities including bending, stooping, crouching, climbing, kneeling, balancing, crawling, pushing, and pulling; no repetitive overhead work; avoid extremely cold and/or damp environment. AR 247.

On October 16, 2012, treating physician Dr. Cohen provided a medical source statement. AR 326-30. Dr. Cohen said he treated plaintiff from April 2011 to October 2012, and indicated a "fair" prognosis. AR 326. Dr. Cohen limited plaintiff as follows: lift and carry up to 10 pounds occasionally, but never more; never climb, balance, stoop, crouch, kneel, or crawl; never reach, push, or pull, and occasional handle and feel. AR 327-28. Dr. Cohen reported that sitting, standing, and walking were not affected by plaintiff's impairments, but that plaintiff could never climb, balance, stoop, crouch, kneel, crawl, reach or push/pull. Id. Plaintiff could occasionally

handle and feel, and hearing and speaking were not limited. AR 328. No other limitations were assessed. AR 328-29. On October 29, 2013, Dr. Cohen responded to another questionnaire indicating that plaintiff could not do even sedentary work, but also wrote "unknown" as to sitting, standing, walking limitations. AR 381-82.

On August 15, 2012, State agency medical consultant Dr. Kiger reviewed the record and assessed an RFC for light work, except that plaintiff could lift/carry 20 pounds occasionally, 10 pounds frequently, sit/stand/walk for six hours in an eight-hour workday; frequently engage in postural activities; and was limited to occasional overhead reaching (AR 80-81). On March 28, 2013, State agency consultant Dr. Newton reviewed the records and concurred with Dr. Kiger's assessment. AR 91-92.

On May 29, 2015, treating physician Dr. Gregorius examined plaintiff for possibility of surgical intervention; he reviewed a 2/11/2015 MRI scan and conducted an examination. AR 796-98. Dr. Gregorius observed limited range of motion in the cervical spine; negative Tinel's and Phalen's sign (for carpal tunnel symptoms), with pain at 60-degree flexion and 45-degree extension. AR 796. Dr. Gregorius noted that he reviewed the 2015 MRI showing foraminal stenosis at C5-6 and C6-7, no evidence of cord compression and a cuff of CSF around the cord at every segment AR 797. There was no evidence of cervical myelopathy, but there was evidence of C6 radiculopathy and degenerative disc disease at C4-C5. Id. Dr. Gregorius diagnosed axial cervical spine pain with some radicular symptoms. Id. Dr. Gregorius found that plaintiff was a surgical candidate because of her lack of response to conservative treatment, but indicated it may not help her persistent cervical pain and headaches. Id. Dr. Gregorius did not assign any functional limitations.

On June 26, 2017, plaintiff saw treating physician Dr. Senegor for the possibility of surgical intervention with respect to her "chronic longstanding right-sided cervical radiculopathy." AR 1079-81. Dr. Senegor noted that plaintiff's symptoms began in the 1990s and have not changed much recently. AR 1079. Dr. Senegor reported 5/5 strength on left side, right deltoid was 4/5 and right grip was 4-/5 with corresponding pain. AR 1081. Dr. Senegor assessed C5-C7 right foraminal stenosis and recommended epidural injections, and if failed, a

8

reevaluation for surgery. AR 1080-81. Dr. Senegor did not assign any functional limitations.

On December 12, 2017, treating physician Dr. Aguilar wrote a letter stating that plaintiff had signs of radiculopathy of the cervical spine, mild chronic C5-C6 greater than C6-C7 radiculopathy on the right arm than the left, with increased polyphasia in the right arm. AR 1340. Dr. Aguilar stated that plaintiff had difficulty lifting/carrying anything more than two pounds on the right arm and should prevent reaching below shoulder level for more than 15 minutes at a time for more than two hours a day an any eight-hour work period, and that plaintiff had trouble grasping due to her radiculopathy. AR 1340.

On January 20, 2018, consulting physician Dr. Reeves responded to medical interrogatories. AR 1347-55. Dr. Reeves reviewed medical evidence provided to him, acknowledged he had never examined the plaintiff, and opined that plaintiff's cervical impairment equaled Listing 1.04 for cervical dysfunction. AR 1347-48. In an accompanying medical source statement, Dr. Reeves noted that plaintiff could do a wide range of sedentary work but limited plaintiff as follows: lift/carry up to 10 pounds occasionally, but never more; sit for five hours at a time and up to eight hours in a workday; stand for five hours at a time, for up to four hours in a workday; walk for one hour at a time for up to two hours in a workday; did not need a cane for ambulation; could never reach overhead, but occasionally could perform other reaching; could continuously perform all other manipulative activities and foot controls; could continuously perform postural activities; and had no environmental restrictions. AR 1350-54. Dr. Reeves also indicated plaintiff could perform certain daily activities such as shopping, traveling alone, using standard public transportation, caring for her own personal hygiene, and sorting, handling, or using papers and files. AR 1355.

    2. <u>Principles Governing the ALJ's Consideration of Medical Opinion Evidence</u>

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.[3] Lester v. Chater, 81 F.3d 821, 834 (9th

---

[3] There have been recent updates to the rules on medical sources; this section of the code applies to claims filed before March 27, 2017. See 20 C.F.R. § 404.1527. Plaintiff's claims were filed prior to 2017, and are therefore not impacted by the changes.

Cir. 1996).

> Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.

Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted).

"The general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). However, when the ALJ resolves conflicts by rejecting the opinion of an examining physician in favor of the conflicting opinion of another physician (including another examining physician), he must give "specific and legitimate reasons" for doing so. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999) ("Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.").

### 3. The ALJ Adequately Evaluated Opinion Testimony, But Omitted an Opinion

The ALJ gave "significant weight" to Dr. Van Kirk's opinion and to the opinions of the State medical consultants Dr. Kiger and Dr. Newton. AR 456. Little weight was given to Dr. Cohen and Dr. Reeves. Id. The ALJ did not address Dr. Senegor, Dr. Aguilar, or Dr. Gregorius as medical opinion evidence. The undersigned finds the ALJ did not err in his assessment of the medical opinions he did weigh, but that his failure to address the medical opinion of Dr. Aguilar was error.

////

////

1                          a. Dr. Van Kirk

The ALJ appropriately gave significant weight to Dr. Van Kirk's assessment because it was based on his examination, which was consistent with the overall findings of some reduced range of motion but normal range of motion in upper extremities, and review of a then-recent MRI from 2012. AR 456. 20 C.F.R. § 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant). Plaintiff argues that the ALJ erred because the February 2012 MRI showed additional findings; essentially, plaintiff disagrees with Dr. Van Kirk's assessment of that MRI. ECF No. 17-1 at 20, AR 242-43. This argument cannot succeed. Plaintiff does not explain what findings in the MRI would necessitate additional restrictions or limitations, nor does she argue what those additional limitations would be. On reply, plaintiff clarifies that she takes issue with the fact that Dr. Van Kirk had not had the opportunity to review a February 2015 MRI of the cervical spine which revealed severe disc desiccation changes at the C5-6 and C6-7 levels with severe canal stenosis and some cord compression. ECF No. 27 at 3; AR 800-01. Plaintiff's argument here is still lacking, failing to explain what additional limitations should have been assessed or how exactly the newer results undermine Dr. Van Kirk's opinion. Indeed, the ALJ did address the 2015 MRI and noted that despite the new findings, "medications were continued with no significant changes." AR 453. The court finds no error here.

                        b. State Agency Physicians

The ALJ accorded significant weight to the opinions of consultative non-examining physicians Dr. Kiger and Dr. Newton, finding they were consistent with the record as a whole and relying on State agency expertise. AR 456-57. Plaintiff again contends these opinions should not have been given significant weight because these physicians "did not have the opportunity to review subsequent objective laboratory findings that revealed and confirmed she had spinal cord compression at C5-6," citing the February 2015 MRI of the cervical spine. ECF No. 17-1 at 21; AR 800-01. For the same reasons discussed above, plaintiff fails to demonstrate error here.

c. Dr. Cohen

The ALJ assigned little weight to Dr. Cohen's opinion, reasoning that his findings were not supported by the record, as indicated by normal physical examinations. AR 456. The ALJ further found Dr. Cohen's opinion internally inconsistent in that it states plaintiff's hands are not affected, but goes on to assign several manipulative limitations. Id. Plaintiff contends it was error to discount Dr. Cohen's opinion because his findings were consistent with the record as a whole and because they were more consistent with subsequent MRIs, including the 2015 MRI discussed above. ECF No. 17-1 at 20. The court disagrees. The ALJ gave two specific and legitimate reasons for discounting Dr. Cohen's opinion. First, the ALJ accurately noted that the Dr. Cohen's medical records mostly addressed medication management and contained very few objective findings that would support his extreme assessment. AR 454, 274-80, 811-920, 930-1023, 1179-1261, 1264-39. An ALJ may discount a medical opinion that is unsupported by medical findings or is lacking in clinical detail. 20 C.F.R. § 416.927 (c)(3),(4) (more weight is given to an opinion and/or medical source if it is well-supported . . .and consistent with the record as a whole); Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (an ALJ may "permissibly reject[ ] ... check-off reports that [do] not contain any explanation of the bases of their conclusions") (quotation omitted); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly discounted treating doctor's limitations for being "so extreme as to be implausible" and "not supported by any findings" including the doctor's own findings). Plaintiff's argument is further undermined by the fact that as recently as November 2017, Dr. Cohen noted that plaintiff's cervical issues were "stable" and she had good upper strength bilaterally, and he continued current medications. AR 454, 1338.

Second, the ALJ found Dr. Cohen's opinion to be internally inconsistent with respect to plaintiff's manipulative limitations. Internal inconsistences within a physician's opinion constitutes a legitimate basis for rejecting the opinion. Morgan v. Comm'r, 169 F.3d 595, 603 (9th Cir. 1999). Finally, to the extent plaintiff makes the argument that Dr. Cohen had the opportunity to review later MRIs, the argument fails for the same reasons discussed above. Thus,

////

the ALJ provided specific and legitimate reasons to discount Dr. Cohen's opinion; there was no error.

### d. Dr. Reeves

Dr. Reeves responded to medical interrogatories on January 20, 2018, opining that plaintiff's impairments equaled the Listing 1.04 for cervical dysfunction, citing a CT of the cervical spine from 1995, an X-Ray from 2011, and the July 2012 MRI. AR 1347-48. Dr. Reeves completed a medical source statement in which he assigned no limitations on postural activities, no limitations on environmental exposure, and no limitations on specified self-care activities. AR 1350-55. The ALJ gave the opinion little to no weight, finding it was internally inconsistent and did not provide adequate support for his conclusion that plaintiff met Listing 1.04. AR 456. Plaintiff contends that the ALJ erred because he did not credit Dr. Reeve's opinion that she met Listing 1.04. ECF No. 17-1 at 21-22. The court disagrees. An ALJ is not required to accept a doctor's finding regarding whether or not a claimant meets a Listing. 20 C.F.R. §§ 416.927(d)(2), (3) (although the agency considers opinions from medical sources regarding whether the claimant's impairment meets or equals a Listing, the final responsibility for deciding these issues is reserved to the Commissioner, and the agency does not give any special significance to the source of an opinion regarding the Listing of Impairments).

Here the ALJ declined to credit Dr. Reeves' assertion that plaintiff's impairments equaled the listing, because the medical source statement that Dr. Reeves provided indicated that plaintiff could perform a wide range of sedentary work, which is inconsistent with Listing 1.04. As discussed above, internal inconsistency is an appropriate reason to discount a physician opinion. Morgan, 169 F.3d at 603. This, along with the fact that the Regulations do not require ALJs to accept a medical source's determination regarding Listings, leads the court to conclude that the ALJ did not err in his treatment of Dr. Reeves.

### e. Dr. Gregorius and Dr. Senegor

On May 29, 2015, Dr. Gregorius examined plaintiff for the possibility of surgical intervention. AR 796-98. He did not assign any functional limitations. Id. On June 26, 2017, Dr. Senegor evaluated plaintiff for the possibility of surgical intervention. AR 1079-81. He did

not assign any functional limitations. Id. The notes of both doctors are included in the record and were addressed by the ALJ. AR 454. Plaintiff contends that the ALJ erred by not assigning weight to these medical opinions. ECF Nos. 17-1 at 19 and 27 at 4-5. The court disagrees. The letters from Drs. Senegor and Gregorius were not "medical opinions" which require assigned weight within the meaning of the Regulations, and the ALJ was not required to assign them specific weight. 20 C.F.R. § 416.927 ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"); Youngblood v. Berryhill, 734 Fed. Appx. 496, 498 (9th Cir. 2018) (unpublished) ("Dr. Mayers did not opine that [claimant] had any specific limitations concerning her ability to concentrate. An ALJ does not err by not incorporating a physician's opinion when the physician had not 'assign[ed] any specific limitations on the claimant.'") (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir. 2010)). The ALJ did not err.

### f. Dr. Aguilar

Dr. Aguilar examined plaintiff and drafted a letter containing specific functional limitations including no lifting/carrying over two pounds with the right arm, and no reaching below shoulder level for more than 15 minutes or more than two hours in an eight-hour workday. AR 1340. Plaintiff argues that the ALJ erred by failing to include Dr. Aguilar in his opinion (ECF No. 17-1 at 19), and the Commissioner agrees this was error but argues the error was harmless because the ALJ did reference Dr. Aguilar's treatment records. ECF No. 26 at 15. The court does not find the error to be harmless. If Dr. Aguilar's opinion is considered and given weight, the RFC and the ultimate determination of disability may be impacted. Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) ("the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that "the ALJ's error was 'inconsequential to the ultimate nondisability determination'").

The failure to acknowledge and weigh Dr. Aguilar's opinion is particularly problematic because Dr. Aguilar is a treating physician, who should have been presumptively entitled to more weight unless properly discounted. Lester, 81 F.3d at 834. Although the ALJ did cite Dr.

Aguilar's treatment records, the citation was brief and conclusory, noting only that the "comprehensive physical examination conducted at the time was essentially unremarkable." AR 454. This does not capture the fairly detailed medical notes, nor does it explain how the medical notes relate to the specific functional limitations described in Dr. Aguilar's letter. AR 454, 1343-44. Dr. Aguilar was a treating physician who provided a medical opinion assessing particular functional limitations, and the ALJ's failure to address the opinion was not harmless error.

### 4. Challenges to Vocational Expert Testimony and RFC

Because the ALJ failed to account for the opinion of treating physician Dr. Aguilar, the questions posed to the Vocational Expert and the RFC are called into question. A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). An ALJ's decision is not supported by substantial evidence when she formulates an RFC that fails to take into account claimant's limitations. Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009); see also Turner, 613 F.3d at 1222-23 (holding that the RFC findings need only be consistent with the relevant assessed limitations and not identical to them). Because the ALJ's failure to account for treating physician testimony calls into question the continuing validity of RFC and the vocational expert hypotheticals and testimony, the court will not substantively address those challenges here. These matters should be revisited on remand.

### B. The ALJ Improperly Discounted Plaintiff's Subjective Testimony

The ALJ erred in his treatment of plaintiff's subjective testimony. ALJs must take the claimant's symptom testimony into account in determining residual functional capacity. Laborin v. Berryhill, 867 F.3d 1151, 1154 (9th Cir. 2017). Evaluating the credibility of a plaintiff's subjective testimony is a two-step process. First, the ALJ must

> determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . . In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom

> she has alleged; she need only show that it could reasonably have caused some degree of the symptom.

Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the severity of the symptom is not required. Id. (internal citations omitted). Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons." Id. at 1014-15 (internal citations omitted). While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not arbitrarily discredit a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). So long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, plaintiff complained of daily pain that she suffers all day and that wakes her at night. AR 202. Plaintiff stated that she could do some shopping, but needed help with lifting. Id. She stated she could not lift anything over five pounds without pain, could not vacuum, sweep, mop, or stand for longer than 15 minutes. Id. She said she could do some limited driving, walk for 30 minutes at a time; stand for 15 minutes at a time; sit for 30-60 minutes at a time, and drove her own car, and did light housekeeping, such as dusting and cooking. AR 202-03. She testified that she had severe pain in her neck, shoulders and arms, and would drop things due to pain and weakness. AR 57-58. Plaintiff testified to frequent, severe, burning headaches, and problems with shaking and dropping things. AR 57, 482-87.

Plaintiff contends here that the ALJ erred in failing to address her credibility with respect to her reports of headaches, and by failing to give sufficient reasons to discount her subjective complaints generally. ECF No. 17-1 at 25-26. The undersigned agrees. First, the ALJ failed to address plaintiff's complaints of severe headaches in his discussion of plaintiff's subjective testimony, and this alone requires remand. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("Because the ALJ did not assert specific facts or reasons to reject Connett's testimony and

to find that her migraines and colitis were controlled by medication, we must reverse the district court on this issue.") The Commissioner's argument that plaintiff's complaints of disabling headaches were essentially insignificant and therefore unnecessary to address, ECF No. 26 at 19, does not withstand scrutiny. Plaintiff testified to disabling headaches on multiple occasions. AR 57, 221, 477, 482-83, 487. Complaints of severe headaches appear frequently in the medical records. AR 10-11, 20, 242, 321, 796, 848, 1079. The ALJ's failure to assess plaintiff's complaints of severe headaches renders his analysis incomplete and therefore requires remand.[4]

### C. Remand for Benefits or for Further Proceedings

As discussed above, the ALJ erred in failing to consider all of plaintiff's subjective pain testimony, and in failing to weigh and factor in the opinion of Dr. Aguilar. Those errors are not harmless, because consideration of these pieces of evidence may impact the RFC and could alter ultimate determination of disability. Accordingly, the court is authorized "to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Treichler v. Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). Here, further factual development is needed to determine if and to what extent the relevant medical opinion and subjective testimony should be credited, and what the impact of crediting this evidence would be on the RFC and the ultimate determination of disability. For these reasons, the matter is reversed and remanded to the Commissioner for further factual development.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 26) is DENIED;

---

[4] The court declines to otherwise opine on the adequacy of the ALJ's rationale for rejecting plaintiff's testimony, as the reasons given may or may not continue to apply when all of plaintiff's pain testimony is properly considered.

3. The matter is REMANDED to the Commissioner for further proceedings consistent with this order; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

SO ORDERED.

DATED: March 19, 2020

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE